# Supreme Court of Texas

No. 25-0008

In the Interest of C.S. Jr. and Z.S., Children

On Petition for Review from the
Court of Appeals for the Eleventh District of Texas

JUSTICE LEHRMANN, joined by Justice Bland and Justice Huddle, and joined by Justice Busby as to Part II, dissenting.

Section 263.401 of the Family Code sets a one-year jurisdictional deadline to commence a trial on the merits in a suit to terminate parental rights. That deadline serves the laudable goal of bringing these heartbreaking cases to a swift conclusion. But the initial dismissal date is not absolute; the statute recognizes that extraordinary circumstances may warrant a limited extension of that date, and the statute accordingly authorizes trial courts to retain their jurisdiction by granting such an extension before the initial deadline has passed. The trial court in this case did just that: it granted an extension of the initial dismissal date before the date passed, and it did so on the record.

The Court concludes that the trial court indicated merely an intent to grant an extension in the future even though the court simultaneously set the case for trial on a date that fell after the initial deadline would elapse. The Court also holds that the trial court—an

associate judge—could not orally grant the extension without a court reporter present. In doing so, the Court dismisses as irrelevant the fact that the Family Code expressly authorizes associate judges, who often bear the brunt of a shortage of court reporters, to preserve the record by other means. I cannot agree with either conclusion and must respectfully express my dissent.

## I. Background

Because the Court concludes that the trial court lost jurisdiction before trial, it does not discuss the facts that led to the children's removal and the trial court's termination of Mother's parental rights. I begin with that discussion.

In February 2023, Mother engaged in conduct in the presence of her two children that led to her being charged with aggravated assault with a deadly weapon. Mother and the children, then two and four years old, accompanied Mother's boyfriend, D'Martja Wellons, to pick up Wellons's child from his ex-girlfriend. Mother "storm[ed]" the ex-girlfriend, and they started physically fighting. Mother then retrieved a gun from Wellons's car, pointed it at his ex-girlfriend, and threatened to shoot her.

This incident prompted an investigation by the Department of Family and Protective Services. A Department caseworker visited Mother's home twice and detected a strong odor of marijuana on both visits. Mother initially denied using the drug, but she then admitted to use "in the prior months," most recently in December 2022. After a court-ordered services hearing on February 28, 2023, Mother was ordered to complete a drug test. Mother's urine test was negative, but

2

her and Wellons's hair-follicle tests were positive for marijuana, and both children tested positive for marijuana in trace amounts. Mother downplayed the children's test results, saying they were "basically negative."

In light of the assault in the children's presence and the positive drug tests, the Department requested, and the trial court ordered, removal of the children from Mother's home and appointment of the Department as their temporary managing conservator. This occurred on March 6, 2023, and the Department placed the children with their paternal grandmother. A few weeks later, the trial court signed a scheduling order setting the case for a pretrial hearing on January 26, 2024, and for trial on February 12, 2024. In bold, capitalized font, the order noted a dismissal date of March 11, 2024. *See* TEX. FAM. CODE § 263.401(a) (providing for termination of the court's jurisdiction over and automatic dismissal of a suit by the Department requesting termination of parental rights or managing conservatorship "on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator," barring commencement of trial on the merits or an extension under Subsection (b) or (b-1)). The order also noted that "[a]ll hearings will be heard by the Associate Judge, except for Jury Trials." *See id.* § 201.005(a) (authorizing a judge, with some exceptions, to "refer to an associate judge any aspect of" certain suits over which the referring court has jurisdiction, including parental termination suits). The associate judge presided over the entirety of the case, including the final bench trial.

3

At the January 26 pretrial hearing, the parties agreed to an extension of the trial setting. The record reflects several reasons for the agreed extension, including to give Mother more time to complete services and additional drug tests and to accommodate Mother's counsel's vacation plans that conflicted with the trial setting. The trial court reset the pretrial hearing for February 23, 2024. It also reset the trial for March 4, a week before the March 11 dismissal date.

Due to a shortage of available court reporters,[1] the February 23 pretrial hearing was electronically recorded and later transcribed. Mother's counsel had undergone a dental procedure that morning and did not attend the hearing. At the trial court's request, the Department's counsel called Mother's counsel to determine how much time she estimated needing for trial. Based on that call and the Department's own estimate, the trial court concluded half a day was necessary. The trial court stated that, based on the court's caseload, "I don't have anywhere to put a half day that works with everyone's schedules" before the March 11 dismissal date. As such, the trial court stated, "I think I have to grant an extension and we can pick a date -- we can go ahead and pick a half day during trial week in April." The trial court asked the Department's counsel to communicate with Mother's counsel regarding her availability the week of April 8. Based on that discussion, the trial court set the case for trial on April 12 and stated that the Department's counsel "is going to get me that extension order before March 11th."

---

[1] The trial judge would later explain that she had a court reporter only one week out of every month.

4

The trial court's and court coordinator's handwritten notes from the pretrial hearing reflect the extension and the new trial date, but the extension was not noted on the docket sheet. As of the March 11 dismissal date, the Department had not submitted a written extension order to the trial court, and the court had not signed one.

On April 4, a week before trial, Mother filed a motion to dismiss, arguing that with no written order or docket entry extending the dismissal date, the trial court lost jurisdiction over the case on March 11. At the hearing on that motion, the trial court discussed the difficulty of finding court reporters in rural West Texas and the accompanying "struggle that this Court has with setting things in order to comply with dismissal deadlines."

The trial court denied Mother's motion to dismiss and signed a written order retaining the suit on the court's docket. The order stated that the court had granted a "263.401(b) extension" on February 23, included the extraordinary-circumstances and best-interest findings, and noted a new dismissal date of September 7, 2024. *See id.* § 263.401(b) (stating that if the court makes those findings, it may retain the suit on its docket for up to an additional 180 days after the initial dismissal date).

At the conclusion of the ensuing trial,[2] the trial court found by clear and convincing evidence that termination of Mother's parental

---

[2] In addition to evidence of the altercation between Mother and Wellons's ex-girlfriend and the evidence of Mother's and the children's initial positive drug tests, the Department presented evidence at trial regarding Mother's conduct after the children's removal. That evidence included several

5

rights was in the children's best interest and that Mother had engaged in conduct satisfying several statutory termination grounds, including knowingly placing or allowing the children to remain in endangering conditions and engaging in conduct that endangered the children. *See id.* § 161.001(b)(1)(D)–(E), (2).[3]  Accordingly, the trial court signed a final order terminating Mother's parental rights to the children.  The court of appeals affirmed.  717 S.W.3d 1 (Tex. App.—Eastland 2024).

## II. Jurisdiction

To encourage prompt resolution of suits in which the Department seeks termination of the parent–child relationship or to be named managing conservator of the child, the Family Code provides for termination of the court's jurisdiction over, and automatic dismissal of, such suits unless the trial court has commenced the trial or granted an extension within one year after the court appoints the Department as

---

positive drug tests for marijuana—though the levels trended downward leading up to trial—and one positive test for cocaine.  In addition, Mother continued to associate with Wellons, who also tested positive for cocaine and marijuana during the pendency of the proceedings and who was limited to supervised visitation with his own child.  And Mother lied to the Department about her relationship with Wellons.  On the other hand, Mother maintained suitable housing and employment, maintained contact with the Department, attended all her supervised visits with the children, completed a substance-abuse assessment and counseling, attended a family violence prevention course, and was involved in no further violent incidents.  Several witnesses testified the children wanted to return to Mother, although they were also happy and doing well with their grandmother.

[3] The trial court also found that the evidence warranted termination under former Subsection (b)(1)(O), which involved a parent's failure to comply with a court-ordered service plan following removal of a child for abuse or neglect.

6

the child's temporary managing conservator.  Tex. Fam. Code § 263.401;

*In re G.X.H.*, 627 S.W.3d 288, 292 (Tex. 2021).  Section 263.401 states in

relevant part:

> (a) Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the suit affecting the parent–child relationship filed by the department that requests termination of the parent–child relationship or requests that the department be named conservator of the child is terminated and the suit is automatically dismissed without a court order. . . .

> (b) Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child.  If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a).  If the court retains the suit on the court's docket, the court shall render an order in which the court:

>> (1) schedules the new date on which the suit will be automatically dismissed if the trial on the merits has not commenced, which date must be not later than the 180th day after the time described by Subsection (a);

>> (2) makes further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit; and

7

>> (3) sets the trial on the merits on a date not later than the date specified under Subdivision (1).

TEX. FAM. CODE § 263.401(a)–(b).

Beginning with Subsection (a), the trial court here "rendered a temporary order appointing the department as temporary managing conservator" on March 6, 2023, meaning that the court's jurisdiction over the case terminated on March 11, 2024, unless the court either "commenced the trial on the merits or granted an extension under Subsection (b)" by that date. *Id.* § 263.401(a). As for Subsection (b)'s extension requirements, we have broken them down as follows:

> The first sentence . . . provides a prerequisite for granting an extension of the dismissal date: the trial court must find (1) extraordinary circumstances necessitate the children remaining in the Department's temporary managing conservatorship, and (2) continuing the appointment of the Department as temporary managing conservator is in the children's best interest. [The] second sentence limits the length of the extension to 180 days. And the third sentence directs the trial court that has granted an extension to render an order that does three things: schedules the new dismissal date, makes further temporary orders as necessary for the children's safety and welfare, and sets the trial date.

*G.X.H.*, 627 S.W.3d at 297.

Importantly, we have held that Section 263.401's only *jurisdictional* requirement is that the trial court grant an extension of the initial automatic dismissal date before it passes. *In re J.S.*, 670 S.W.3d 591, 603–04 (Tex. 2023); *G.X.H.*, 627 S.W.3d at 301 ("[W]hile a trial court's failure to timely extend the automatic dismissal date before that date passes . . . is jurisdictional, claimed defects relating to the other requirements of 263.401(b) are not."). Thus, the requisite

8

extraordinary-circumstances and best-interest findings, as well as the order described in Subsection (b)'s third sentence, are mandatory but not jurisdictional. *J.S.*, 670 S.W.3d at 604; *G.X.H.*, 627 S.W.3d at 300–01.

We have also held that the statute does not require a formal written order to grant an extension. In *G.X.H.*, we held that even a pre-dismissal-date docket-sheet entry reflecting the extension is sufficient to satisfy Section 263.401's jurisdictional component. 627 S.W.3d at 301. In doing so, we discussed the Family Code's definition of the term "render" and explained that "the pronouncement [of the court's ruling] may be made orally in the presence of a court reporter or in writing, 'including on the court's docket sheet or by a separate written instrument.'" *Id.* at 298 (quoting TEX. FAM. CODE § 101.026). We further emphasized that while trial courts should make the extraordinary-circumstances and best-interest findings "in a written order as a matter of course, . . . the failure to do so is not error, provided the findings are made orally on the record or in some other writing." *Id.* at 299.

Here, the trial court complied with Section 263.401's only jurisdictional requirement—it granted an extension before March 11, 2024. As discussed, at the February 23 pretrial hearing, the trial court struggled to find a setting that would accommodate the parties' need for a half-day trial. As the court would later explain, this was due in part to a shortage of court reporters in certain areas of the State:

> It's not clear if you just read this record that I do not have a Court Reporter that is employed as my Official Court Reporter, which is part of the reason that we have a trial

9

week.  Because I have a Court Reporter who will come one week out of the month and so we set our trials during that week.  The County and the State of Texas do not provide me with a salaried Court Reporter.  And we live in rural West Texas.  It is difficult to find Court Reporters. . . .

So, that is part of the struggle that this Court has with setting things in order to comply with dismissal deadlines.

Given the scheduling difficulties, the trial court stated that "I think I have to grant an extension and we can pick a date -- we can go ahead and pick a half day during trial week in April."  The court later confirmed, "[L]et's go set Smith, 11002 [i.e., this case], the week of April 8th, and I am grant -- I am going to have to grant an extension."  After additional discussion regarding the exact date, the court concluded, "How about Friday, April the 12th, at 9:00?  We are going to put Smith, 11002."  The trial court then instructed the Department's counsel to "get me that extension order before March 11th."[4]  The trial court's notes from the hearing reflect the extension and the new trial date.

Despite this exchange, the Court concludes that the trial court did not actually grant an extension on February 23; it only intended to do so sometime in the future but before March 11.  I cannot agree.  First, as the Court recognizes, Section 263.401 does not require that the extension be granted in writing.  *See ante* at 10; *see also G.X.H.*, 627

---

[4] The Court emphasizes the instances of "inaudible or unintelligible statements" and other omissions in the transcript of the hearing.  *Ante* at 3.  However, the portions of the transcript at issue here—specifically, the discussion about extending the dismissal date and setting the case for trial—are perfectly clear.

S.W.3d at 299 (holding that the failure to make the findings underlying an extension order in writing is not error).

Second, in my view, the trial court made it clear at the pretrial hearing that the court was granting an extension. In a vacuum, perhaps the phrase "I am going to have to grant" merely indicates an intent to grant in the future. But in context, it does not. *See Sargent v. Sargent*, No. 02-24-00470-CV, 2025 WL 2627033, at *3–4 (Tex. App.—Fort Worth Sep. 11, 2025, no pet.) ("[A] trial court's use of the words 'will approve' and 'will sign' indicate an intent to render judgment in the future. . . . Here, however, the word 'will' did not stand alone, as additional evidence supported the fact that the trial court intended to render judgment [at that time]."). Specifically, the court also explained that it did not have availability for a trial before the dismissal date, stated "let's go set" the case for trial the week of April 8, and then confirmed April 12 as the new trial date after the Department's counsel spoke with Mother's counsel (twice) about her availability. It would make no sense for the trial court to set the case for trial on April 12 before granting an extension.

The Court views as "[c]rucial[]" the trial court's indication at the hearing that it would be issuing a subsequent written order. *Ante* at 4. But that is perfectly consistent with an intent to comply with the statute's additional, nonjurisdictional requirements like making express extraordinary-circumstances and best-interest findings, which the court had not yet done. *See J.S.*, 670 S.W.3d at 601–03 (holding that the statutory findings must be made expressly but compliance with that requirement is not jurisdictional). And in the trial court, Mother did not make the "intention" argument that the Court finds so persuasive.

11

Mother contended in her motion to dismiss that the extension order was a nullity because no court reporter was present and the court failed to make the requisite findings.[5]  Even in this Court, Mother argues that the February 23 "order" retaining the suit on the trial court's docket was "defective," not that no such order was issued.  In holding otherwise, the Court ignores the obvious: the trial court's act of resetting the case for trial on April 12 demonstrated the court's present intent to grant the extension.  Otherwise, what was the point?  A reset to a specific date would serve no purpose had the court not yet extended the dismissal date.

Like the trial court and the court of appeals, I view the transcript of the February 23 hearing as reflecting an oral order granting an extension of the dismissal date and setting a new trial date.  Further, the court granted the extension on the record, before the March 11 dismissal date, which in my view was sufficient to allow the trial court to retain jurisdiction over the case.

Typically, of course, the record of a hearing is preserved by the trial court's official court reporter.[6]  TEX. GOV'T CODE § 52.042(a).  "On

---

[5] Mother argued in the court of appeals, and continues to argue in this Court, that the trial court lacked the present intent to grant the extension at the February 23 hearing.  In the trial court, however, Mother stated that "on February 23, 2024, the Court made an oral pronouncement, or rendering, granting the extension pursuant to 401(b)" and argued that the pronouncement was insufficient given the absence of a docket entry or court reporter.

[6] As a general matter, "[e]ach judge of a court of record shall appoint an official court reporter."  TEX. GOV'T CODE § 52.041(a).  However, courts of record in counties with populations of less than 125,000 may share an official court reporter.  *Id.* § 52.041(b)–(c).

12

request," the reporter "attend[s] all sessions of the court," "take[s] full shorthand notes of oral testimony offered before the court," "preserve[s] the notes for future reference for three years," and "furnish[es] a transcript of the reported evidence or other proceedings" in accordance with the governing statute. *Id.* § 52.046(a).

However, that is not necessarily the case for associate judges. Under the Family Code, a court reporter "may be provided during a hearing held by an associate judge," but a reporter is only "*required* to be provided when the associate judge presides over a jury trial or a contested final termination hearing." TEX. FAM. CODE § 201.009(a) (emphasis added). With those two exceptions, "in the absence of a court reporter or on agreement of the parties, the record may be preserved by any means approved by an associate judge." *Id.* § 201.009(c).[7] That authorization—to preserve the record by another approved means—makes sense given that associate judges are not always guaranteed a court reporter and, as was the case here, often struggle to ensure that one is present even on those occasions when they are required. The fact that court reporters are not in sufficient supply should not affect our courts' ability to preserve records of proceedings held before associate judges, who are necessary to the efficient administration of an overburdened justice system. The adage "justice delayed is justice denied" is particularly apt in child protection cases, making the use of alternative means of record preservation even more important.

---

[7] Similar provisions govern associate judges appointed by district and statutory county courts in civil cases more generally. *See id.* § 54A.110.

Here, as discussed, the presiding associate judge was provided a court reporter during trial weeks but otherwise preserved the record by electronic recordings due to the scarcity of court reporters in the area. The Family Code authorized the associate judge to do so. *Id.*; *see also id.* § 101.0255 (defining "record" as "information that is: (1) inscribed on a tangible medium or stored in an electronic or other medium; and (2) retrievable in a perceivable form"). Consistent with that permissible practice, the February 23 hearing was preserved by an electronic recording, which a court reporter later transcribed. We know from that transcription, just as we would know from a transcription prepared by a court reporter who attended the hearing, that the trial court granted an extension.

I recognize, as the Court did in *G.X.H.*, *see* 627 S.W.3d at 298, that the Family Code defines the term "render" as "the pronouncement by a judge of the court's ruling on a matter," which "may be made orally in the presence of the court reporter or in writing, including on the court's docket sheet or by a separate written instrument," TEX. FAM. CODE § 101.026. Mother therefore argues, and the Court concludes, that although the February 23 hearing was electronically recorded, the trial court could not orally "render" an extension order unless a court reporter was present. *Ante* at 7–9. But *G.X.H.*, which involved a docket-sheet entry, simply did not address the issue here: whether a trial court may orally grant an extension without a court reporter present but in a manner authorized by other provisions of the Family Code. In *G.X.H.*, we utilized Section 101.026's definition of "render" to support our conclusion that while the extraordinary-circumstances and best-interest

14

findings mandated by Section 263.401(b) should be made "in a written order as a matter of course, . . . the failure to do so is not error, provided the findings are made orally on the record or in some other writing." 627 S.W.3d at 299. That same reasoning applies here. A trial court should grant an extension "in a written order as a matter of course," but "the failure to do so is not error, provided the [extension is granted] orally on the record or in some other writing." *Id.*

In sum, the associate judge in this case granted an extension on the record, in a manner authorized by the Family Code, before the March 11, 2024 dismissal date passed. That is what Section 263.401 requires for the trial court to retain jurisdiction. The Court erroneously requires more.

### III. Additional Issues

Mother raises two additional issues that the Court does not reach given its conclusion that the trial court lost jurisdiction. I would reach those issues and affirm the court of appeals' judgment.

First, Mother asserts that the trial court erred by failing to make the extraordinary-circumstances and best-interest findings when it extended the dismissal date. As discussed, one of Section 263.401's nonjurisdictional requirements is that the trial court, to retain the suit on its docket beyond the initial dismissal date, must "find[] that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." TEX. FAM. CODE § 263.401(b). Mother is correct that the trial court erred by failing to

15

make these findings when it extended the dismissal date, but the court cured that error when it subsequently issued the written order in which the court, among other things, expressly made the requisite findings.

Second, Mother challenges the sufficiency of the evidence to support the trial court's termination judgment. As explained, that judgment is premised on the court's finding by clear and convincing evidence that Mother endangered the children and that termination is in their best interest. In this Court, Mother does not challenge the sufficiency of the evidence to support the trial court's endangerment findings. She does, however, assert that legally insufficient evidence supports the best-interest finding.

In the context of a clear-and-convincing burden of proof, the evidence is legally sufficient to support a finding if "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). Given the evidence described above, and for the reasons explained in detail by the court of appeals, 717 S.W.3d at 25–27, I would hold that a reasonable factfinder could have formed a firm belief or conviction that termination was in the children's best interests.

## IV. Conclusion

The Court erroneously holds that the trial court never even *purported* to grant an extension before the initial dismissal date passed. To justify that conclusion, the Court ignores the obvious—that the trial court's contemporaneous act of resetting the trial to a date that fell after the initial deadline demonstrated a present intent to grant the

16

extension. Further, the Court ignores the Family Code's efforts to ensure associate judges have the means to preserve the record in the absence of an available court reporter, treating an on-the-record ruling as though it does not exist. I respectfully dissent.

_____

Debra H. Lehrmann
Justice

**OPINION FILED:** June 5, 2026

17